Mr. Justice Humphreys
delivered the opinion of the court:
This cause was certified from the equity branch of the court, to be heard in general term in the first instance.
The bill states that on the 30th of April, 1867, one Daniel Pfeil, of Washington, District of Columbia, rented and leased from defendant Patrick O’Donnoghue, by indenture, for the full term of five years from the first day of May of that year, the lot of ground and premises situate in square numbered four hundred and fifty-four, fronting on Seventh street west, *555 in Washington City. This allegation is admitted in the answer of O’Donnoghue.
The hill alleges that said Pfeil was to pay a yearly rent ot two hundred and twenty dollars, in equal monthly payments, and to erect a building at a cost of not less than sixteen hundred dollars. The answer admits the payment of the rent up to the 30th of April, 1872, the full term of the lease, and also the erection of a building as provided in said indenture. The indenture of lease is exhibited. Said Pfeil took possession under said lease 1st of May, 1867, and he and his assigns have been in possession ever since.
The bill alleges that, on the 16th of May, 2867, the defendant O’Donnoghue and said Pfeil contracted for the sale and purchase of the said premises, at the end of the term of lease, for and at the sum of eight thousand dollars; five hundred dollars to be paid in cash, the balance, seven thousand five hundred dollars, to be paid on or before the expiration of said term of lease. This allegation of sale and purchase defendant O’Donnoghue positively denies in his answer.
Complainants produce a written memorandum, marked Exhibit No. 4, in the following words and figures:
“ $500.] “ Washington, May 16,1867.
Received of Mr. Daniel Pfeil the sum of five hundred dollars, in part payment for lot on Seventh street, between G and H north, at $8,000, sold to him.
PATRICK Q’DONNOGHTTE.”
The execution of this paper is denied by the defendant O’Donnoghue. In his deposition he says that he thinks the signature to the memorandum is his. But he does not know in whose handwriting the remainder of the paper is; and that he never saw the writing before it was shown to him by — he thinks — General Sanborn.
Pfeil says, in his deposition, that the handwriting of Exhibit 4 is his except“ sold to him, ” and the signature “ Patrick O’Donnoghue,” and examiuer’s and notary public’s memoranda, and that O’Donnoghue put the words “ sold to him” in the writing. He says, in another part of his examination, that he does not know what words O’Donnoghue put in the said memorandum. This witness says that he put the figures *556 $8,000 on the paper, but scratched them off, or made a mark through. He further says that he rented the premises, but he cannottell what year; that the lease will show. The indenture recites that the yearly rent was two hundred and twenty dollars, payable monthly. This witness, in his deposition, says that he leased the premises for five years, and had to pay sixteen hundred dollars for the five years, five hundred dollars cash, leaving eleven hundred dollars rent. He was to pay monthly. He further says that he paid O’Donnoghue five hundred dollars in the beginning; that he supposes he took a receipt for it; that he “ never, at any time, entered into an agreement with O’Donnoghue to purchase this property from him, and that there never was any agreement at any time, in writing or otherwise, that he was to have the property at eight thousand dollars at any time during his lease.” In another part of his deposition this witness says he does not know what he put the $8,000 in the receipt for.
Here we have the written indenture of lease and memorandum of the parties, the signatures to which are acknowledgments by each, and the statements of these parties in answer, and depositions casting and throwing confusion on the whole transaction. The law raises the question, What disposition is to be made of these writings and the conflicting statements of verbal assertions'? The rule is well known and recognized. Several witnesses, other than the parties, were examined, and they all corroborate and sustain the writings exhibited. At the date of the lease and in connection therewith, witness Plant states that the purchase of the property was mentioned, and that the sum of $8,000 was stated. Other witnesses prove the signatures of the parties, their acknowledgments of the same, and the law attaches a force to the writings in this case which the evidence fails to overturn, but, on the contrary, sustains and corroborates.
We conclude, therefore, that the evidence establishes a contract for the sale and purchase of the premises as set forth in the bill of complaint.
The written memoranda, signed by the parties, Pfeil and O’Donnoghue, are before us, and the testimony of those two persons, in their effort to attack the bona fides of the written instruments, fails to overthrow or to even weaken the force *557 which the law attaches, annexes, and fixes to a writing signed by the parties. And the testimony of every other witness, not connected with the matters in controversy, either directly or circumstantially, corroborates, upholds, and establishes the sale and purchase.
On the 10th of June, 1868, Daniel Pfeil sold and transferred all his right, title, and interest in the lease to Edwin B. Olmstead, of Washington City. On the 2d of December, 1868, the said Olmstead assigned the said indenture to the complainants. On the 10th of June, 1868, said Pfeil assigned his interest in the contract of sale and purchase to said Olmstead; and on the 4th of December, 1868, said Olmstead assigned his right, title, and interest in said purchase and sale to the complainants. These various assignments and transfers were acknowledged before notaries public, and recorded in the proper register’s office in the city of Washington. Either Pfeil or complainants have had possession of the premises since May, 1867; rents were all paid up to April, 1872; and at the expiration of the term of lease, complainants tendered the sum of seven thousand five hundred dollars to said O’Donnoghue, and also prepared and requested him to sign a deed to and for the said described premises, which he declined and refused to do.
On the 7th of October, 1870, O’Donnoghue borrowed of defendant, McGuire, four thousand dollars, and executed a deed of trust to secure the same to defendant Merrick, trustee, on and upon the premises in controversy. Complainants bring into court, or propose so to do, the sum of seven thousand five hundred dollars, and pray that the same may be applied to the benefit of said O’Donnoghue in the extinguishment of the deed to Merrick, balance to him, and that the said deed to said trustee be canceled, and said O’Donnoghue be required to convey by deed a full title to complainants.
On payment into eourt of the money, we think the complainants will be entitled to the decree asked for, and counsel will carefully draught the same.